# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street, Room 256<br>Denver, CO 80202 | DATE FILED: May 11, 2021 6:00 AM<br>FILING ID: 691D9E2555140<br>CASE NUMBER: 2021CV31464 |
| **ALYSSA DETERT,**<br>**ALEX MYERS,**<br>**AMANDA PRUESS,**<br>**CLARA PRUESS,**<br>**and those similarly situated,**<br>Plaintiffs,<br><br>v.<br><br>**BUFFALO EXCHANGE LTD,**<br>**TODD COLLETTI,**<br>**FORGOTTEN WORKS, LLC,**<br>**WATERMELON SUGAR, LLC,**<br>**TATANKA, INC.,**<br>**SCOUT DRY GOODS COLORADO LLC,**<br>**JUSTIN VAN HOUTEN,**<br>**VICTOR CORTES, and**<br>**KATHERINE PLACHE**<br>Defendants. | ♦ COURT USE ONLY ♦ |
| Attorneys for Plaintiff:<br><br>J. Bennett Lebsack, No. 45206<br>Mary Jo Lowrey, No. 40411<br>Sara Maeglin, No. 49943<br>LOWREY PARADY LEBSACK, LLC<br>1490 Lafayette St., Suite 304<br>Denver, CO 80218<br>Telephone: (303) 593-2595<br>Fax: (303) 502-9119<br>ben@lowrey-parady.com<br>maryjo@lowrey-parady.com<br>sm@lowrey-parady.com | CASE NO:<br><br>DIVISION: |

**COMPLAINT AND JURY DEMAND**

Buffalo Exchange employed Plaintiffs Alyssa Detert, Alex Myers, Amanda Pruess, and Clara Pruess. Buffalo Exchange permitted Defendant Todd Colletti, an owner

of its Colorado stores, in creating a hostile work environment based on sex and aided and abetted him in his actions. Mr. Colletti verbally and physically harassed his employees, even sexually assaulting several of them. When employees complained to Buffalo Exchange about Mr. Colletti, their complaints were ignored or forwarded to Mr. Colletti to handle. For their complaint, Plaintiffs state as follows:

## **PARTIES**

1.   Plaintiff Alyssa Detert is a resident of and is domiciled in Denver, Colorado. Her address 1415 Franklin Street, #6, Denver, CO 80218.

2.   Plaintiff Alex Myers is a resident of and is domiciled in Denver, Colorado. His address 370 East 11th Avenue, #403, Denver, CO 80203.

3.   Plaintiff Amanda Pruess is a resident of and is domiciled in Denver, Colorado. Her address is 1751 Willow Street, Denver, CO 80220.

4.   Plaintiff Clara Pruess is a resident of and is domiciled in Denver, Colorado. Her address is 1751 Willow Street, Denver, CO 80220.

5.   Defendant Buffalo Exchange LTD is an Arizona corporation with a principal place of business located at 203 E. Helen, Tucson, Arizona 85705.

6.   Defendant Forgotten Works, LLC, is an Arizona limited liability company with a place of business located at 51 Broadway, Denver, CO 80203 and principal mailing address of 2525 Arapahoe Ave, #e4-132, Boulder, CO 80302. Victor Cortes, Katherine Plache, and Justin Van Houten are the sole members and owners of Forgotten Works, LLC. Todd Colletti was a member and owner of Forgotten Works, LLC, until 2020.

7.   Defendant Watermelon Sugar, LLC, is an Arizona limited liability company with a place of business located at 1813 Pearl Street, Boulder, CO 80302 and principal mailing address of 2525 Arapahoe Ave, #e4-132, Boulder, CO 80302. Victor Cortes, Katherine Plache, and Justin Van Houten are the sole members and owners of Watermelon Sugar, LLC. Todd Colletti was a member and owner of Watermelon Sugar, LLC, until 2020.

8.   Defendant Tatanka, Inc., is an Arizona corporation with a principal place of business located at 610 W. Sagebrush Dr., Louisville, CO 80027 and principal mailing address of 2525 Arapahoe Ave, #e4-132, Boulder, CO 80302. Victor Cortes, Katherine Plache, and Justin Van Houten are the owners of Defendant Tatanka, Inc. Todd Colletti was an owner of Tatanka, Inc., until 2020.

9.      Defendants Forgotten Works, Watermelon Sugar, and Tatanka are collectively re-
        ferred to as "the Tatanka Defendants." Buffalo Exchange LTD and the Tatanka
        Defendants are collectively referred to as "Buffalo Exchange."

10.     Defendant Todd Colletti is a Colorado resident whose most recent known address
        was 3050 S. Marion St., Englewood, CO 80113.

11.     Defendant Justin Van Houten is a Colorado resident who resides at 610 W Sage-
        brush Drive, Louisville, CO 80027.

12.     Defendant Victor Cortes is an Arizona resident who resides at 10767 E. Santa Fe
        Trail, Scottsdale, AZ 85262.

13.     Defendant Katherine Plache is a Colorado resident who resides at 1039 38th Trail,
        Cotopaxi, CO 81223.

14.     Defendant Scout Dry Goods Colorado LLC ("Scout") is a Colorado limited liability
        corporation with a principal place of business of 51 N Broadway, Denver, CO
        80203 and a principal mailing address of 610 W Sagebrush Dr, Louisville, CO
        80027.

15.     All defendants purposefully availed themselves of the privilege of conducting busi-
        ness in Colorado and this Complaint arises out of the Defendants' contacts with
        Colorado.

16.     At all material times, Defendants Buffalo Exchange LTD, Forgotten Works, Water-
        melon Sugar, and Tatanka were each "employer[s]" within the meaning of C.R.S.
        § 24-34-401(3).

17.     At all material times, Plaintiffs Detert, Myers, Amanda Pruess, and Clara Pruess
        were each "employee[s]" of Defendants Buffalo Exchange LTD, Forgotten Works,
        Watermelon Sugar, and Tatanka within the meaning of C.R.S. § 24-34-401(2).

## **JURISDICTION AND VENUE**

18.     The Court has jurisdiction over this case under Art. 6 § 9 of the Constitution of the
        State of Colorado and the parties under C.R.S. § 13-1-124.

19.     Under C.R.C.P 98(c), venue is proper in Denver County because Defendants For-
        gotten Works and Scout Dry Goods Colorado reside in Denver and a number of
        the torts alleged in this Complaint were committed in Denver County.

20.     Plaintiffs Detert and Myers each filed Charges of Discrimination with the Colorado
        Civil Rights Division. The Colorado Civil Rights Division issued Notices of Right
        to Sue to Plaintiffs Detert and Myers on March 26, 2021.

## **FACTUAL ALLEGATIONS**

21.   Buffalo Exchange LTD operates a chain of retail used clothing stores under the "Buffalo Exchange" brand across the United States. Buffalo Exchange LTD is owned by Kerstin and Rebecca Block.

22.   Kerstin Block and Todd Colletti have been personal and family friends for decades.

23.   Mr. Colletti, along with Victor Cortes, Katherine Plache, and Justin Van Houten, founded Tatanka, Forgotten Works, and Watermelon Sugar.

24.   In 1998, Buffalo Exchange LTD entered into a franchise agreement with Tatanka to operate Buffalo Exchange stores in Colorado. Tatanka assigned some rights to operate these stores to Forgotten Works and Watermelon Sugar.

25.   Buffalo Exchange LTD has only entered into franchise agreements with entities owned exclusively by Mr. Colletti, Mr. Cortes, Ms. Plache, and Mr. Van Houten.

26.   Until about August 2020, Buffalo Exchange LTD listed the Colorado stores operated by Tatanka Defendants on its website as locations of its stores. The website did not distinguish the Colorado stores from its other stores on its website. The Buffalo Exchange LTD website stated that store credit from the Denver store may be used at any other Buffalo Exchange locations outside of Colorado.

27.   Buffalo Exchange provides job descriptions for employees that establish the terms under which an employee must perform. The bottom of each page of a job description states "© Buffalo Exchange, Ltd."

28.   Buffalo Exchange evaluated employee performance, including Plaintiffs' performance, with a "Performance Report Card." The evaluation states "© Buffalo Exchange, Ltd. 2005-2014<<Document 15/3/2016>>" on the bottom of each page and "Store Location:" on the top of each page. For Denver store employees, the Store Location says Denver.

29.   Buffalo Exchange required employees to pass a Product Knowledge Quiz. The bottom of the quiz states "© Buffalo Exchange, Ltd. 2005-2016."

30.   Buffalo Exchange issues a "90 Day Progress Report" to new managers. The bottom of the document states "© Buffalo Exchange, Ltd. 2010."

31.  Buffalo Exchange communicated to employees, including Plaintiffs, changes to the terms and conditions of employment on documents titled "Communication Form." The bottom of this document states "© Buffalo Exchange, Ltd., 1994, 1996."

32.  Buffalo Exchange required employees, including Plaintiffs, to submit scheduling change requests on a form titled "Buffalo Exchange Availability Change Request." The bottom of the form states "© Buffalo Exchange, Ltd. 2003 – 2016."

33.  In 2014, Buffalo Exchange had all employees, including those in Colorado stores, sign a Consent to Receive Electronic Notices, which states "Buffalo Exchange may need to send important documents to you via email." The form instructs Buffalo Exchange employees to request paper copies of any documents received electronically by contacting Buffalo Exchange LTD's human resources department at 520-622-2711. The bottom of the document states "© Buffalo Exchange, LTD. 2014."

34.  Buffalo Exchange required employees to review and sign a Code of Safe Practices. The bottom of each page of this document states "© Buffalo Exchange, Ltd., 1988-2005, 2010."

35.  Buffalo Exchange empowered Mr. Colletti as the primary manager of the Colorado stores. Mr. Colletti was in the stores on a near daily basis. Mr. Colletti made decisions about hiring and firing and promoting employees to management positions.

36.  When Buffalo Exchange opened a store on Broadway in Denver, Mr. Colletti converted the basement into a bar to host parties. Mr. Colletti drank a lot at the bar, and he did a lot of cocaine at these parties. He did a lot of cocaine while the store was open, too. Buffalo Exchange owners and managers witnessed Mr. Colletti with cocaine at the workplace. And employees told owners and managers about the cocaine use and parties.

37.  Mr. Colletti eventually added a darkroom for photograph development to the basement. He also took naked photographs of his employees, their friends, and other people who found their way to the basement bar. He goaded these people into removing their clothes by offering drugs, alcohol, or merchandise. Mr. Colletti held a position of power over these people, direct financial power over his employees, and social influential power over all of them.

38.  Mr. Colletti verbally abused his employees. He called one employee the n-word. He called one employee's mom a "milf." He labeled one employee "a fat gay" and

another "a fat Black girl." He commented on Ms. Detert's butt. He called another owner's clothing "faggy."

39.   Mr. Colletti physically abused his employees while they were working. He often punched employees in the arms while walking around the store, jabbed both of his hands in the sides of employees' hip and waist areas to scare them, grabbed and twisted the skin on their arms to give them friction burns, tickled employees, and on some occasions hit female employees on their butts hard enough to leave a mark.

40.   Mr. Colletti encouraged sexist hiring practices. He told one manager to hire women instead of men.

41.   When Buffalo Exchange separated employment with an employee, through termination or resignation, it requested the employee complete a written exit interview. Numerous employees over the last fifteen years included statements in their exit interviews about Mr. Colletti's harassment and assaults. Buffalo Exchange management and ownership received these exit interviews.

42.   In about 2012, a Buffalo Exchange Denver employee reported to Buffalo Exchange LTD that Mr. Colletti assaulted her. Buffalo Exchange LTD contacted Mr. Colletti and the other Tatanka Defendant owners and banned Mr. Colletti from visiting the store for thirty days.

43.   In about July 2013, Buffalo Exchange fired an employee from the Denver store. The employee was friends with a coworker who Mr. Colletti sexually assaulted about a year before. This employee called Buffalo Exchange LTD a few times to complain about the circumstances of her termination and about Mr. Colletti's behavior. The person she spoke with at Buffalo Exchange LTD told her that there was nothing Buffalo Exchange LTD could do about the situation. Buffalo Exchange LTD contacted the Denver store and asked the manager to demand that the terminated employee stop contacting the corporate number. This manager relayed the message to the employee, but the employee continued to call until the corporate office stopped taking her calls.

44.   In about 2013 or 2014, someone called the police about a party in the basement bar. The responding officers arrested Mr. Colletti and put him in a police car while they searched the premises. On information and belief, the arrest was reported to Buffalo Exchange's owners.

45.   Around this time, Buffalo Exchange's owners held a few meetings to discuss Mr. Colletti's behavior. Their goal was to get Mr. Colletti to settle down and stop visiting the store frequently. The owners held a storewide meeting following these meetings. The storewide meeting included an agenda with item one: "no more drinking on the clock."

46.   Around this time, Mr. Colletti proposed to the other owners of Buffalo Exchange and managers putting a hot tub on the roof of the store so that he and employees could party in a hot tub. The owners and managers objected to the hot tub on the roof, so Mr. Colletti informed them he would install one at his house and move parties to his house.

47.   Despite receiving complaints and meeting about them, Buffalo Exchange did nothing to correct Mr. Colletti's behavior. The owners of these entities heard complaints and stories about Mr. Colletti's behavior and saw firsthand much of that behavior at parties in the basement of Buffalo Exchange's Denver store. But Defendants continued to empower Mr. Colletti with managerial responsibility over the Colorado stores and encourage his behavior by allowing him to operate an after-hours bar out of the basement of the Denver store.

48.   During basement parties, Mr. Colletti got naked and asked others to get naked. He also took a lot of pictures of women and sometimes took women into his darkroom to be photographed naked. Mr. Colletti posted these photos of naked and semi-naked women all over the walls of the bar.

49.   In about December 2014, Buffalo Exchange hosted an event at the Denver store with nearly every Buffalo Exchange manager, most of Buffalo Exchange's owners, and Buffalo Exchange LTD human resources representatives attending. Many of these people saw the basement bar.

50.   On December 23, 2015, Mr. Colletti learned that one his employees, Alyssa Detert, was separating from her husband. He sexually assaulted Ms. Detert that night. He sexually assaulted her several more times over the course of the next three years, the final assault occurring in July 2018.

51.   On information and belief, a former Buffalo Exchange employee complained to Buffalo Exchange LTD about Mr. Colletti's conduct in late 2015.

52.   In January 2016, Buffalo Exchange LTD and Forgotten Works entered into an amendment to their franchise agreement. The amendment required a notice to be

posted in the Denver store stating, in part "EACH AND EVERY EMPLOYEE OF THE BUFFALO EXCHANGE STORE, DENVER, COLORADO, IS HEREBY GIVEN NOTICE THAT THEIR EMPLOYER IS FORGOTTEN WORKS, L.L.C. . . . HOWEVER, BUFFALO EXCHANGE, LTD. IS <u>NOT</u> YOUR EMPLOYER."

53. In August 2016, Mr. Colletti held one of his basement parties. During the party, he learned that Amanda Pruess, one of his employees, broke up with her boyfriend earlier that night. At the end of the party, Mr. Colletti encouraged Amanda Pruess and a few others from the party to go back to his house with him to drink more. After a few drinks, Mr. Colletti sent the other guests home, but kept Amanda Pruess behind. Mr. Colletti encouraged her to sleep in his bed, so she did. When Amanda Pruess woke up, Mr. Colletti told her to take a shower before he would drive her home. While in the shower, Mr. Colletti entered the bathroom naked and masturbating. Mr. Colletti approached Amanda Pruess and ejaculated on her body while she showered.

54. That same day, Amanda Pruess was scheduled to work at Buffalo Exchange. When she arrived to work, she was visibly upset and told her sister Clara Pruess, who also worked at Buffalo Exchange, and another coworker what had happened. They reported the assault to Meagan Fellers who was the Manager on Duty at the time.

55. Amanda Pruess's friend reported the assault to a manager who reported it to Cassie Medved, Manager of the Denver store. Ms. Medved then reported the assault to Shawna Slavinski and Angela DiCarlo, both managers who functioned in quasi-human resources roles**.**

56. Within a day or two of Mr. Colletti's sexual assault of Amanda Pruess, her sister Clara Pruess called Buffalo Exchange LTD's corporate number to report sexual harassment and assault at the Colorado stores. The person who received the call told Clara Pruess that she would have to contact her "internal HR department." When Clara Pruess explained there was no "internal HR," the person indicated she could not help and got off the call.

57. Within a few days of her call, the manager on duty at the Denver store asked employees whether they knew who called the corporate number. On information and belief, Kerstin Block informed Mr. Colletti that someone complained about him.

58.   Upon information and belief, a second person who learned of the assault of Amanda Pruess and was a former Buffalo Exchange employee also reported the assault to Buffalo Exchange LTD.

59.   On information and belief, the owners and managers of the Tatanka Defendants met about Amanda Pruess's complaints. The owners and managers decided to prohibit Mr. Colletti from entering the retail store location and from holding parties in the basement bar for a few months. But after a few months, Mr. Colletti was permitted to return to the store, and did so, and permitted to hold parties in the basement bar, and did so.

60.   On Clara Pruess's first day of work, when Mr. Colletti learned that she was Amanda Pruess's sister, he made references about having a threesome with Clara Pruess and her sister.

61.   Throughout her employment, Mr. Colletti repeatedly smacked Clara Pruess on her butt while she was on the sales floor. Sometimes he smacked her so hard it was painful.

62.   On one occasion in the break room, Mr. Colletti poured water on Clara Pruess, who was wearing a white t-shirt, to make her shirt see-through. Mr. Colletti then groped her breasts. Clara Pruess had to get a new shirt to wear for the remainder of her shift. A manager was present and witnessed the incident.

63.   Buffalo Exchange hired Clara Pruess to assist with accounting, however, she was not allowed to see any information on Buffalo Exchange's computer accounting systems, which made it difficult to do her job. She observed that Mr. Colletti was taking money out of the cash register to purchase cocaine.

64.   It was made clear to Clara Pruess by the managers and other employees at Buffalo Exchange that she would get a poor review if she did not participate in the basement parties. Buffalo Exchange often fired people based on not being a "cultural fit" because they did not participate in the basement parties.

65.   In approximately March 2018, Mr. Colletti was overheard telling someone that the reason he wasn't having basement parties was "because of the me too movement" and that the "younger generation should start taking responsibility for their actions and stop blaming [him] for their problems."

66.    On July 1, 2018, Buffalo Exchange required an employee who separated employ-
       ment to complete a written exit interview, as was common practice. Buffalo Ex-
       change's owner, Justin Van Houten, received a copy of this exit interview. The
       employee stated:

> My work definitely did not align with my personal goal of working for
> an ethical company, however. This became clear to me once the cur-
> tain was drawn and I learned about Todd's predatory nature and
> habit of supplying my coworker[]s with cocaine. I felt an immense
> amount of guilt that, as a survivor of sexual assault, I still had to be
> nice to this man who had hurt so many. . . . The biggest relief brought
> on by no longer working at Buffalo Exchange is that I don't have to
> live with the insurmountable guilt of working for a sexual predator.
>
> * * *
>
> I try to warn people about the dangers of working at Buffalo Ex-
> change. It's a[n] unsafe and drug-fueled atmosphere. The track rec-
> ord for how this place has treated employees with mental illness is
> really bad. Nothing will change my opinion about this place until Todd
> is gone and the management team is reformed in some way.

67.    On August 7, 2018, a Boulder store employee complained to Buffalo Exchange
       LTD through its Instagram account that "as someone who poured my heart and
       soul in[]to your business and worked under insane and illegal conditions at the
       Boulder store for nearly 5 years, I wish that y'all would do something about their
       conduct. From Todd, to horrible management and beyond, they are out of control.
       This message will probably go unnoticed and not receive a reply however I can't
       help but write."

68.    The Buffalo Exchange LTD employee tasked with responding to this complaint
       asked Mr. Colletti how he wanted to handle it. Buffalo Exchange replied "Hi Liza,
       Thank you for bringing this to our attention. We take your message seriously and
       will be looking into this." Buffalo Exchange LTD followed up with Mr. Colletti after
       sending the response. Mr. Colletti said that "everything had been done from an HR
       and legal perspective, and that this was due to a small local disgruntled group of
       ex-employees."

69.    Buffalo Exchange took no further action in response to the Instagram complaint. Mr. Colletti continued to harass his employees on a near daily basis, host parties in the basement of the Denver store, and lure women half his age to sexually assault.

70.    In December 2018, Good Business Colorado became aware of allegations regarding Mr. Colletti's sexual harassment and assault of employees at Buffalo Exchange. In response, Good Business Colorado informed Justin Van Houten of the allegations and rejected Buffalo Exchange's membership to the organization.

71.    On February 26, 2019, a Buffalo Exchange former employee emailed Buffalo Exchange LTD and complained that her previous complaints of harassment to the corporate officer were ignored. Buffalo Exchange LTD forwarded the email to Mr. Colletti, explaining "Hey Todd! We just got this." Mr. Colletti forwarded this email to Justin Van Houten, who on information and belief, forwarded the email to Victor Cortes and Katherine Plache.

72.    In January 2020, one of Buffalo Exchange's owners, Victor Cortes, emailed the rest of the owners and managers:

> I continue to feel that events and parties in the basement are just asking for trouble. Issues like under age [*sic*] drinking, drugs, employee issues, fires, permit or occupancy limits, etc. could really take us down. Don't think it's worth it. In the past you just shut down the bar and limited any access for parties but now I understand that it's happening again with regularity. What are your thoughts? Is this something that you think should continue? If so, what precautions can we put into place to protect us - both in terms of liability (like insurance) but also with Buffalo and our franchise agreement. I know you've been worried about this and it seems that any more employee incidents could put them over the edge. Interested in your thought[s] and potential solutions.

73.    Buffalo Exchange LTD protects its brand. Outside of the terms of the franchise agreement, Buffalo Exchange LTD exercised control over how the Tatanka Defendants ran their clothing store.

74. Buffalo Exchange LTD required Colorado managers to attend its annual or semi-annual manager meeting in Tempe, Arizona. During these meetings, Buffalo Exchange LTD trained its employees on human resources, sales, inventory, safety, and copyright issues. At these meetings, Buffalo Exchange LTD provided its employees with employee handbooks.

75. Buffalo Exchange employees at the Colorado stores were bound by the policies Buffalo Exchange LTD provided to managers at the manager meetings.

76. Buffalo Exchange LTD's owners, the Blocks, and other executives visited the Colorado store several times and attended parties in the basement of the Denver store.

77. In the summer of 2020, an anonymous Instagram account began sharing stories of employees and other victims of Mr. Colletti's behavior. As the Instagram account attracted followers, it became the subject of gossip in the Buffalo Exchange stores and received media attention.

78. On about July 26, 2020, Kerstin Block emailed Mr. Colletti: "Todd, I saw stuff on Instagram on you and I must say that some people are truly evil and vengeful. I am sorry that you are accused personally. So far we are accused more for our business decisions, but I am getting personal attacks as well. I am waiting to see what else they can come up with. In sympathy, Kerstin."

79. Four days later, Rebecca Block issued a public statement on behalf of Buffalo Exchange, which included:

> These very serious allegations demand very serious remedies with immediate action. As soon as we learned of the allegations, we began working with our franchise attorney to identify our legal rights under the franchise contract with the owners of the Colorado stores. I want you to know that under no scenario will Colletti have a place anywhere in Buffalo Exchange ever again. The same goes for anyone who was in a position of authority who knew what he was doing and did not act. If you are a victim, or you have direct knowledge that you feel would help this investigation, please email Rebecca@BufEx.com.

> As of today, our relationship with the Buffalo Exchange Colorado franchise stores is terminated. We have revoked any rights to the Buffalo Exchange brand and name.

> In addition to these measures, we're reaching out to a number of local organizations that offer support to victims of sexual assault to provide resources for everyone affected. We will have more information on this in the coming days.
>
> To the victims, I am so sorry this happened. Most of all, I want you to know: we believe you. I hope the actions we're taking clearly show that we stand in solidarity with you.

80. Buffalo Exchange terminated the employment of all of the Colorado employees, but offered them positions in other stores if they wanted to move to a different state during the COVID-19 pandemic.

81. Buffalo Exchange employed Amanda Pruess off-and-on from about 2010 to 2016. During her employment, Mr. Colletti made sexual comments to her and slapped and grabbed her butt several times.

82. Buffalo Exchange employed Clara Pruess from March to August 2016. During her employment, Mr. Colletti slapped and grabbed her butt several times, once while telling her she was "looking sexy today" and once while telling her how "fat her ass" was. Mr. Colletti poured water on Clara Pruess's chest while she was wearing a white shirt, then touched her breasts. Mr. Colletti groped her breasts once in the presence of a store manager.

83. Buffalo Exchange employed Mr. Myers from January 2011 until July 2020. In 2016, Mr. Myers resigned his employment at Buffalo Exchange and informed Buffalo Exchange managers, Cassie Medved and Marika Evanger, that the reason he was resigning was because he learned that Mr. Colletti sexually assaulted a coworker. When Mr. Myers returned to Buffalo Exchange about a year later, Mr. Colletti told him that the environment had changed, that the store was now a positive location and there were no more parties in the basement bar. But after a few months, Mr. Colletti harassed employees again and resumed holding parties in the basement bar. Mr. Colletti gave Mr. Myers friction burns on his arms, tickled Mr. Myers, and would stick his fingers in the sides of Mr. Myers's body to try to scare him. Mr. Myers demanded Mr. Colletti stop touching him, but Mr. Colletti persisted and continued to assault Mr. Myers on a regular basis at the store. Mr. Colletti also made offensive racist, sexist, and homophobic comments to Mr. Myers. Mr. Colletti made sexual remarks to Mr. Myers about the appearances of customers and employees,

like commenting on the "nice rack" or "nice ass" of female employees, and called Mr. Myers "moose knuckle."

84.    Buffalo Exchange employed Ms. Detert on and off from 2006 to 2010 then consist-ently from April 2012 to July 2020. Throughout Ms. Detert's employment, Mr. Col-letti sexually harassed her while she was working. Mr. Colletti made comments about her physical appearance, particularly about her butt and breasts. He touched her back and shoulders when she wore a strapless dress. He snuck up on her to scare her or tickle her. He poked at her arms. He gave her friction burns on her wrists. The last time he made a comment about Ms. Detert's physical appearance was in about June 2020.

85.    Mr. Colletti made sexual comments or comments based on sex to nearly every employee of Buffalo Exchange and physically harassed, through actions like tick-ling and friction burns, nearly every employee of Buffalo Exchange. As of July 31, 2020, Buffalo Exchange employed over 50 employees at the Denver store.

86.    The Tatanka Defendants are mere instrumentalities for the transactions of Todd Colletti, Victor Cortes, Katherine Plache, and Justin Van Houten. None of the Ta-tanka Defendants operate as distinct business entities separate from Todd Colletti, Victor Cortes, Katherine Plache, and Justin Van Houten. There are no adequate corporate records for the Tatanka Defendants. The legal formalities for the Tatanka Defendants are disregarded. Corporate funds and assets of the Tatanka Defend-ants and Todd Colletti, Victor Cortes, Katherine Plache, and Justin Van Houten have been commingled. The nature and form of Todd Colletti, Victor Cortes, Kath-erine Plache, and Justin Van Houten's ownership and control of the Tatanka De-fendants facilitated misuse by Todd Colletti, Victor Cortes, Katherine Plache, and Justin Van Houten.

87.    On information and belief, the Tatanka Defendants do not have sufficient assets to provide relief to those harmed by their unlawful actions.

88.    In November 2020, several owners of the Tatanka Defendants started Defendant Scout Dry Goods Colorado LLC. On information and belief, Victor Cortes, Kathe-rine Plache, and Justin Van Houten are managers and owners of Scout.

89.    On January 2, 2021, Scout opened a retail used clothing store at the location of Buffalo Exchange's Denver store at 51 Broadway, Denver, CO 80203.

90. Scout was created and incorporated after the filing of Charges of Discrimination against Buffalo Exchange, so Scout was aware of the Charges when it succeeded in operating the Tatanka Defendants' business.

91. One of the owners of Scout stated that she wants to help the local resale-fashion scene heal from recent traumas, namely those traumas described in this Complaint.

92. Scout uses substantially the same inventory and equipment that Buffalo Exchange used. The Tatanka Defendants transferred a substantial amount of their assets to Scout.

93. Scout honors retail credits from Buffalo Exchange.

94. Scout re-hired several Buffalo Exchange employees, including supervisors.

95. Scout is a successor entity to the Tatanka Defendants and liable to Plaintiffs for all debts and judgments owed to the Plaintiffs by any Tatanka Defendant.

## CLASS ALLEGATIONS

96. Plaintiffs assert their claims as Colo. R. Civ P. 23 class actions on behalf of themselves and on behalf of the classes they seek to represent.

97. Pending any modifications necessitated by discovery, Plaintiffs Detert and Myers preliminarily define the Class as follows:

> ALL EMPLOYEES OF BUFFALO EXCHANGE WHO WERE
> SUBJECT TO A HOSTILE WORK ENVIRONMENT BASED
> ON SEX AT BUFFALO EXCHANGE'S COLORADO STORES
> IN THE SIX MONTHS PRECEDING DECEMBER 23, 2015.

98. The class is so numerous that joinder of all potential class members is impracticable.

99. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include:

a)  Whether Defendants employed Plaintiffs and the Class members;

b)  Whether Plaintiffs and the Class members were subject to a hostile work environment by Defendants;

    c) Whether the conduct complained of was sexual in nature or directed at the Plaintiffs and Class members because of their sex;

    d) Whether Defendants knew or should have known about the conduct to which Plaintiffs and the Class members claim they were subjected and failed to implement reasonably prompt and appropriate corrective action;

    e) Whether certain Defendants are strictly liable for the actions of Todd Colletti; and

    f) Whether Defendants Buffalo Exchange LTD and Todd Colletti aided and abetted the Plaintiffs and Class members' employers in violating the Colorado Anti-Discrimination Act.

100. The class claims asserted by Plaintiffs are typical of the claims of all potential class members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy.

101. Plaintiff will fairly and adequately protect and represent the interests of the class. Plaintiffs were employees of the corporate Defendants and were harassed by Defendant Colletti.

102. Plaintiffs have no interests that are adverse to the class or other class members.

103. Plaintiffs are represented by counsel experienced in litigating class action claims.

104. The prosecution of separate actions by the individual putative class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.

105. Many Class members' claims are relatively small. Thus, the interest of potential Class members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

106. Plaintiffs are unaware of any member of the putative classes who is interested in presenting claims in a separate action.

107. Plaintiffs are unaware of any pending litigation commenced by putative class members.

108. It is desirable to concentrate this litigation in this state because a substantial amount of the alleged acts or omissions giving rise to the suit took place in this state.

109. This class action will not be difficult to manage due to the uniformity of claims among putative Class members and the susceptibility of these claims to both class litigation and the use of representative testimony and representative documentary evidence.

110. Certification of the class under Rule 23(b)(3) of the Colorado Rules of Civil Procedure is appropriate.

111. Certification of the class under Rule 23(b)(2) of the Colorado Rules of Civil Procedure is also appropriate because Defendants acted on grounds generally applicable to the class thereby making appropriate injunctive relief with respect to the classes as whole.

112. Plaintiffs request certification of the class under Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for equitable relief.

## **LEGAL CLAIMS**

### **FIRST CLAIM FOR RELIEF**
Outrageous Conduct
All Plaintiffs against Defendants Todd Colletti, Buffalo Exchange LTD, Tatanka, Inc., Forgotten Works, LLC, Watermelon Sugar, LLC, and Scout Dry Goods Colorado LLC

113. Plaintiff incorporates all allegations in this pleading into this claim for relief.

114. Defendants engaged in extreme and outrageous conduct.

115. Defendants did so recklessly or with the intent of causing Plaintiffs severe emotional distress.

116. Defendants' conduct caused Plaintiffs severe emotional distress.

### **SECOND CLAIM FOR RELIEF**
Hostile Work Environment in Violation of
Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq.*
Plaintiffs Detert and Myers on behalf of all Class members against Defendants Buffalo

Exchange LTD, Tatanka, Inc., Forgotten Works, LLC, Watermelon Sugar, LLC, and Scout Dry Goods Colorado LLC

117.   Plaintiffs incorporate all allegations in this pleading into this claim for relief.

118.   Defendants created a hostile work environment.

119.   The conduct complained of was unwelcome.

120.   The conduct complained of was offensive.

121.   The conduct complained of was sexual in nature or directed at the Plaintiffs and Class members because of their sex.

122.   The conduct complained of was sufficiently severe or pervasive to alter the terms and conditions of the Plaintiffs' and Class members' employment by creating an abusive working environment.

123.   Defendants knew or should have known about the conduct to which Plaintiffs and the Class members claim they were subjected and failed to implement reasonably prompt and appropriate corrective action.

124.   Plaintiffs and the Class members suffered damages because of the hostile work environment.

### THIRD CLAIM FOR RELIEF
Aiding and Abetting in Violation of
Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq.*
Plaintiffs Detert and Myers on behalf of all Class members against Defendants Buffalo Exchange LTD and Todd Colletti

125.   Plaintiffs incorporate all allegations in this pleading into this claim for relief.

126.   Plaintiffs and the Class members were subject to a hostile work environment based on sex.

127.   Defendants Buffalo Exchange LTD and Todd Colletti knew Plaintiffs and the Class members were subject to a hostile work environment based on sex.

128.   Defendants Buffalo Exchange LTD and Todd Colletti engaged in conduct that assisted, aided, and abetted Plaintiffs and the Class members' employers in its unlawful employment practices.

129. Plaintiffs and the Class members suffered damages because Defendants Buffalo Exchange LTD and Todd Colletti aided and abetted their employers in the creation and allowance of the hostile work environment.

## FOURTH CLAIM FOR RELIEF
### Premises Liability Act, C.R.S. § 13-21-115
Plaintiffs Detert and Myers against Defendants Tatanka, Inc., Forgotten Works, LLC, Watermelon Sugar, LLC, and Scout Dry Goods Colorado LLC

130. Plaintiff incorporates all allegations in this pleading into this claim for relief.

131. Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC are landowners under C.R.S. § 13-21-115 because they were legally responsible for the activities conducted on the premises of the Colorado Buffalo Exchange locations.

132. Plaintiffs Detert and Myers were invitees to the premises under C.R.S. § 13-21-115(5)(a).

133. Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC knew and should have known that Todd Colletti was a danger to invitees, including Plaintiffs Detert and Myers.

134. Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC unreasonably failed to exercise reasonable care with respect to the danger Todd Colletti posed to Plaintiffs Detert and Myers.

135. Because Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC unreasonably failed to exercise reasonable care with respect to Todd Colletti, Plaintiffs Detert and Myers suffered damages.

## FIFTH CLAIM FOR RELIEF
### Sexual Assault/Unlawful Sexual Contact
Plaintiffs Detert, Amanda Pruess, and Clara Pruess
against Defendant Todd Colletti

136. Plaintiff incorporates all allegations in this pleading into this claim for relief.

137. Defendant Colletti's actions resulted in sexual contact, sexual intrusion, and/or sexual penetration with Plaintiffs Detert, Amanda Pruess, and Clara Pruess because Defendant Colletti touched Plaintiffs Detert, Amanda Pruess, and Clara Pruess's intimate areas without their consent and/or sexually assaulted them without their consent.

138.   Defendant Colletti intended to make harmful or offensive physical contact with Plaintiffs Detert, Amanda Pruess, and Clara Pruess without their consent.

139.   The contact with Plaintiffs Detert, Amanda Pruess, and Clara Pruess was harmful or offensive.

140.   Defendant Colletti knowingly committed these actions.

141.   Because of the contact, Plaintiffs Detert, Amanda Pruess, and Clara Pruess suffered damages.

**SIXTH CLAIM FOR RELIEF**
Sexual Assault/Unlawful Sexual Contact
Plaintiffs Detert, Amanda Pruess, and Clara Pruess
against Defendants Tatanka, Inc., Forgotten Works, LLC,
Watermelon Sugar, LLC, and Scout Dry Goods Colorado LLC

142.   Plaintiff incorporates all allegations in this pleading into this claim for relief.

143.   Defendant Colletti's actions resulted in sexual contact, sexual intrusion, and/or sexual penetration with Plaintiffs Detert, Amanda Pruess, and Clara Pruess because Defendant Colletti touched Plaintiffs Detert, Amanda Pruess, and Clara Pruess's intimate areas without their consent and/or sexually assaulted them without their consent.

144.   Defendant Colletti intended to make harmful or offensive physical contact with Plaintiffs Detert, Amanda Pruess, and Clara Pruess without their consent.

145.   The contact with Plaintiffs Detert, Amanda Pruess, and Clara Pruess was harmful or offensive.

146.   Defendant Colletti knowingly committed these actions.

147.   Defendant Colletti was an agent of Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC. Defendant Colletti was the alter ego of Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC. Defendant Scout is a successor entity to Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC and is liable to Plaintiffs for all judgments owed to Plaintiffs by Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC.

148.   Because of the contact, Plaintiffs Detert, Amanda Pruess, and Clara Pruess suffered damages.

**SEVENTH CLAIM FOR RELIEF**
Assault
Plaintiffs Detert and Myers against Defendant Todd Colletti

149.   Plaintiffs incorporate all allegations in this pleading into this claim for relief.

150.   Defendant Colletti intended to cause an offensive or harmful physical contact with Plaintiffs Detert and Myers or intended to place Plaintiffs Detert and Myers in apprehension of such contact.

151.   Defendant Colletti placed Plaintiffs Detert and Myers in apprehension of immediate physical contact.

152.   The contact was or appeared to be harmful or offensive.

153.   As a result of the contact, Plaintiffs Detert and Myers suffered damages.

**EIGHTH CLAIM FOR RELIEF**
Assault
Plaintiffs Detert and Myers against Defendants Tatanka, Inc., Forgotten Works, LLC, Watermelon Sugar, LLC, and Scout Dry Goods Colorado LLC

154.   Plaintiffs incorporate all allegations in this pleading into this claim for relief.

155.   Defendant Colletti intended to cause an offensive or harmful physical contact with Plaintiffs Detert and Myers or intended to place Plaintiffs Detert and Myers in apprehension of such contact.

156.   Defendant Colletti placed Plaintiffs Detert and Myers in apprehension of immediate physical contact.

157.   The contact was or appeared to be harmful or offensive.

158.   Defendant Colletti was an agent of Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC. Defendant Colletti was the alter ego of Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC. Defendant Scout is a successor entity to Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC and is liable to Plaintiffs for all judgments owed to Plaintiffs by Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC.

159.   As a result of the contact, Plaintiffs Detert and Myers suffered damages.

## NINTH CLAIM FOR RELIEF
### Battery
### Plaintiffs Detert and Myers against Defendant Todd Colletti

160.   Plaintiffs incorporate all allegations in this pleading into this claim for relief.

161.   Defendant Colletti's actions resulted in physical contact with Plaintiffs Detert and Myers.

162.   Defendant Colletti intended to make harmful or offensive physical contact with Plaintiffs Detert and Myers.

163.   The contact was harmful or offensive.

164.   As a result of the contact, Plaintiffs Detert and Myers suffered damages.

## TENTH CLAIM FOR RELIEF
### Battery
### Plaintiffs Detert and Myers against Defendants Tatanka, Inc., Forgotten Works, LLC, Watermelon Sugar, LLC, and Scout Dry Goods Colorado LLC

165.   Plaintiffs incorporate all allegations in this pleading into this claim for relief.

166.   Defendant Colletti's actions resulted in physical contact with Plaintiffs Detert and Myers.

167.   Defendant Colletti intended to make harmful or offensive physical contact with Plaintiffs Detert and Myers.

168.   The contact was harmful or offensive.

169.   Defendant Colletti was an agent of Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC. Defendant Colletti was the alter ego of Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC. Defendant Scout is a successor entity to Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC and is liable to Plaintiffs for all judgments owed to Plaintiffs by Defendants Tatanka, Inc., Forgotten Works, LLC, and Watermelon Sugar, LLC.

170.   As a result of the contact, Plaintiffs Detert and Myers suffered damages.

## ELEVENTH CLAIM FOR RELIEF
### Negligence
### All Plaintiffs against Defendants Todd Colletti, Buffalo Exchange LTD, Tatanka, Inc., Forgotten Works, LLC, Watermelon Sugar, LLC, and Scout Dry Goods Colorado LLC

171.   Plaintiffs incorporate all allegations in this pleading into this claim for relief.

172.   Defendants each owed each plaintiff a duty of care.

173.   Defendants breached that duty of care to each plaintiff.

174.   Defendants were negligent.

175.   Because of Defendants' negligence, Plaintiffs suffered damages.

## REQUESTED RELIEF

176.   Plaintiffs respectfully ask the Court to grant the following relief:

a)  Economic damages, including unpaid wages;

b)  Non-economic damages, including physical and mental pain and suffering, inconvenience, emotional stress, humiliation, embarrassment, impairment of the quality of life;

c)  Physical impairment damages;

d)  Punitive damages under C.R.S. § 24-34-405;

e)  Reverse pierce the corporate veil and hold Forgotten Works, LLC, Watermelon Sugar, LLC, and Tatanka, Inc., liable for the liability and any judgment of Todd Colletti and permit discovery on this issue;

f)  Pierce the corporate veil and hold Todd Colletti, Victor Cortes, Katherine Plache, and Justin Van Houten liable for the liability and any judgment of Forgotten Works, LLC, Watermelon Sugar, LLC, and Tatanka, Inc. and permit discovery on this issue;

g)  Declaration that Defendant Scout Dry Goods Colorado, LLC, is a successor entity to the Tatanka Defendants and responsible for any judgment against the Tatanka Defendants;

h)  Attorneys' fees;

i)  All costs incurred by Plaintiff in bringing this action;

j)  Pre-judgment and post-judgment interest at the highest lawful rate; and

k)  Any other legal or equitable relief the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a jury of no less than six on all issues so triable.

Respectfully submitted this 11th day of May, 2021, by:

LOWREY PARADY LEBSACK, LLC

*s/ J. Bennett Lebsack*
J. Bennett Lebsack, No. 45206
1490 Lafayette St., Suite 304
Denver, CO 80218
Telephone: (303) 593-2595
Fax: (303) 502-9119
ben@lowrey-parady.com